## In re William Edward BRADLEY, Debtor.

### Patricia H. KNEE, Plaintiff,

v.

### William Edward BRADLEY, Defendant.

#### Bankruptcy No. 86–00103–R.
#### Adv. No. 86–0083–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 24, 1986.

James E. Moore, Richmond, Va., for plaintiff.

James R. Sheeran, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the motion of the plaintiff, Patricia H. Knee ("Knee"), for relief from the automatic stay of 11 U.S.C. § 362 in order to proceed against certain real property situated in the City of Richmond, Virginia on which Knee has a deferred purchase money deed of trust lien. The property is owned by the debtor and defendant in the above-styled proceeding, William Edward Bradley ("Bradley"). A hearing was convened on Knee's motion on March 18, 1986 and Bradley appeared, in person and by counsel, in opposition. Given that some uncertainty arose as to the availability of the relief sought, briefs were ordered and this matter was taken under advisement. Accordingly, based upon the evidence adduced at the hearing, the Court's familiarity with this debtor's past history in this Court, the briefs filed by the parties, and the arguments of counsel, the Court makes the

following findings of fact and conclusions of law.

## FINDINGS OF FACT

The facts in this proceeding are substantially uncontroverted. Bradley filed a petition for relief under Chapter 13 of Title 11 of the United States Code on February 8, 1984. Bradley's plan proposed to pay his unsecured creditors 100% of their allowed claims, and the plan was confirmed by order of this Court entered May 24, 1984. The plan was funded, not through future earnings, but rather by the sale of a certain parcel of real property located in Henrico County, Virginia.

Several months after his Chapter 13 plan was confirmed, Bradley purchased, on September 19, 1984, a condominium in Richmond, Virginia from Knee. The purchase price of the condominium was $41,500 and Bradley paid $20,000 in cash at closing. Bradley apparently used the excess cash remaining after the sale of his Henrico property and after satisfaction in full of the claims in the Chapter 13 case. The remaining $21,500 balance was to be paid in six consecutive monthly installments of $254.78, beginning on October 19, 1984 and concluding on March 19, 1985. At the time of the last monthly payment, the entire remaining balance on the note became due and payable. Evidencing and securing this obligation are a note and a deed of trust on the condominium given as security. Bradley made the first monthly payment; however, as no further payments were received, notice of a foreclosure sale was advertised and the sale was scheduled for May 17, 1985.

On May 16, 1985, one day prior to foreclosure and three months prior to the entry of discharge in his original Chapter 13 case, Bradley filed another petition for relief under Chapter 13. Under the second Chapter 13 plan, Bradley proposed to sell a condominium that he owned in Florida in order to pay off Knee and any new creditors. The sale of the Florida property, however, did not generate enough funds to satisfy Knee's secured claim in full, there-by causing a default in the terms of the second Chapter 13 plan. As a result, on October 18, 1985, Knee filed a motion to dismiss the second Chapter 13, pursuant to 11 U.S.C. § 1307(c), on the grounds of unreasonable delay and material default in the plan.

A hearing on Knee's motion was convened on November 12, 1985, and at Bradley's counsel's request, the matter was continued for two weeks in order to attempt refinancing of the Knee obligation. Bradley did not attend the hearing. On November 27, 1985, a second hearing on Knee's motion to dismiss took place, Bradley again being absent, and the matter was continued in order to allow for an attempted refinancing. The Court instructed Bradley's counsel that unless new financing was obtained, the second Chapter 13 would be dismissed. In addition, the Court, after being advised by Bradley's counsel that a third Chapter 13 plan might be in the offing should the second Chapter 13 be dismissed, informed both counsel for Bradley and counsel for Knee that a third filing would border on abuse of process, and that it was not the intent of the Bankruptcy Code to stave off secured creditors indefinitely. At the third and final hearing on December 11, 1985, on Knee's motion to dismiss, Bradley again not appearing, the petition was dismissed as the Court previously admonished, given that no new financing had been obtained and the material default in the plan had not been cured.

The trustee under Knee's deed of trust scheduled a second foreclosure sale on the Richmond condominium secured by the deed of trust. The sale was set for January 17, 1986, at 2:00 P.M.; however, Bradley obtained new counsel and he filed his third petition for relief, this time under Chapter 11 of the Bankruptcy Code, the morning of the foreclosure sale. On February 5, 1986, Knee filed a motion to dismiss Bradley's petition for bad faith, continuing diminution of the estate, and the absence of a reasonable likelihood of rehabilitation. Due to the lack of notice to all parties in interest as required by Bankruptcy Rule 2002 and the requirement of

prompt disposition of matters brought under § 362, no hearing on the motion to dismiss has yet been scheduled.

On February 18, 1986, Knee filed the instant adversary proceeding, requesting relief from the automatic stay in order to proceed against the property by foreclosure under her deed of trust. Knee argues lack of good faith as grounds for relief, and a hearing was convened on March 18, 1986. As stated in his response to the motion for relief from stay, Bradley proposes, although no plan has yet been filed, to pay Knee $20,000 cash, the cash apparently remaining from the sale of his Florida property in the second Chapter 13, and then to amortize the remainder of the debt over the next eight years. With the addition of attorney's fees, Bradley allegedly owes Knee approximately $32,000 as of the date of the filing of the Chapter 11 petition.

## CONCLUSIONS OF LAW

■ Although Congress singled out lack of adequate protection as one form of "cause" for relief from the automatic stay under § 362(d)[1] of the Bankruptcy Code, it also made clear that "cause" was not limited solely to a creditor's lack of adequate protection. *Farmers & Merchants Bank & Trust v. Trail West, Inc.*, 28 B.R. 389, 394 (D.S.D.1983); *See* H.Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977). Although a matter of first impression in this district, a number of courts have concluded that a bankruptcy court may grant relief from the automatic stay for cause under § 362(d) if the debtor's petition has not been filed in good faith. *In re Seaspire, Inc.*, 56 B.R. 159 (Bankr.M.D.Fla. 1986) *vacated*, 57 B.R. 168 (Bankr.M.D.Fla. 1986); *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984); *Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983); *In re Corp.*

*Deja Vu.*, 34 B.R. 845 (Bankr.D.Md.1983); *In re Zed, Inc.*, 20 B.R. 462 (Bankr.N.D.Ca. 1982); *In re Lotus Investments, Inc.*, 16 B.R. 592 (Bankr.M.D.Fla.1981).

Chapter 11 does not by its literal terms require that a petition be filed in good faith, yet given that a plan of reorganization cannot be confirmed unless proposed in "good faith" under 11 U.S.C. § 1129(a)(3),[2] courts have implied such a provision to "prevent abuse of the bankruptcy laws and protect jurisdictional integrity." *In re Talledega Steaks, Inc.*, 50 B.R. 42, 43 (Bankr.N.D.Ala.1985); *In re Lotus Investments, Inc.*, 16 B.R. 592, 594 (Bankr.S.D.Fla.1981). As such, it is reasonable to conclude that conduct which would warrant a dismissal of the entire Chapter 11 case for "cause" on the basis of a lack of good faith is sufficient to satisfy the "cause" requirement for relief from stay under § 362(d). *Lotus Investments*, 16 B.R. at 595. The question before the court in this proceeding is, therefore, whether Bradley's conduct in filing the instant Chapter 11 petition evidences a lack of good faith sufficient to warrant relief from the automatic stay. In attempting to answer the above question, a bankruptcy court should avoid "unnecessary rigidity" and employ an elastic approach to each case. *Matter of Levinsky*, 23 B.R. 210, 219 (Bankr.E.D.N.Y.1982). Although no one factor has emerged as determinative of a lack of good faith, there are several indicia which the courts find persuasive.

One factor considered relevant to a determination of good faith is whether the debtor's reorganization effort is one which "involves essentially a two-party dispute which can be resolved outside the Bankruptcy Court's jurisdiction, where the purpose of the filing is to frustrate a creditor's sale." *In re American Property Corporation*, 44 B.R. 180, 182 (Bankr.M.D.Fla.

---

**1.** 11 U.S.C. § 362(d)(1) provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property under subsection (a) of this section of such party in interest ...

**2.** 11 U.S.C. § 1129(a)(3).

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . . .

(3) The plan has been proposed in good faith and not by any means forbidden by law.

1984); *In re Mildevco, Inc.*, 40 B.R. 191, 193 (Bankr.S.D.Fla.1984). Courts have also looked to whether the debtor can name any unsecured creditors, *American Property*, 44 B.R. at 182, *Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983), whether the debtor has any assets to protect, and whether he is engaged in an ongoing business. *Furness*, 35 B.R. at 1006; *see e.g., In re Dutch Flat Investment Co.*, 6 B.R. 470 (Bankr.N.D.Ca.1980).

In *Mid-Valley Aggregates, Inc.*, 49 B.R. 498 (Bankr.D.N.D.1985), the court, ultimately determining that the debtor's petition under Chapter 11 was filed in good faith, found that the substantial increase in the debtor's obligations since the debtor's prior filing was a significant factor for consideration. *Mid-Valley*, 49 B.R. at 501. Conversely, the *absence* of any substantial increase in the debtor's obligations would logically be a significant consideration in determining a lack of good faith. Moreover, in connection with a debtor who has filed successive petitions, the timing of the petitions would also seem to be a relevant factor.

▎ The present Chapter 11 case surely can be characterized as essentially a two-party dispute. Knee became a creditor of Bradley prior to discharge in his initial Chapter 13 case. In the second Chapter 13, which was timed to forestall Knee's attempted foreclosure, Bradley listed only three other creditors given that the majority of his unsecured debt was being satisfied by the previous Chapter 13. In the instant Chapter 11, Bradley has again listed three creditors other than Knee, the largest of his obligations being his attorney's claim for fees in the prior Chapter 13 proceedings. Bradley has no substantial unsecured debt,[3] other than that owed his previous attorney, and his obligations have

not increased greatly since his earlier filing.

Although the law seems clear that an individual is eligible for Chapter 11 relief, *see In re Moog*, 774 F.2d 1073 (11th Cir. 1985), it is relevant that Bradley is not engaged in business and that the sole sources of income available to Bradley to fund a Chapter 11 plan are his approximately $200 weekly net income from his employment at United Virginia Bank and his $291 monthly retirement annuity. The only reason that Bradley is in Chapter 11, as opposed to Chapter 13, is that if he were in Chapter 13, he would be unable to alter the terms of the secured obligation to Knee on his principal residence due to the restrictions placed on a Chapter 13 debtor by 11 U.S.C. § 1322(b)(2). Under § 1322(b)(2),[4] a debtor may not modify the rights of holders of claims secured by a security interest in the debtor's principal residence; therefore, the terms of Bradley's obligation to Knee could not be reinstated and modified to provide for payment over an extended period of time. Bradley's original counsel was aware of the § 1322(b)(2) limitation, and he was likewise aware that the possibility existed under Chapter 11 to require the secured creditor to involuntarily accept deferred payments over a longer term. Bradley's determination was not to undertake the complexity and cost of a Chapter 11 and instead he pursued his remedies under Chapter 13.

Knee has received no payment on her secured note since the monthly payment due in October, 1984, and even though the terms of the note may be modified in Chapter 11, Knee has been prejudiced by the year and one-half delay and the attendant cost of twice noticing aborted foreclosure sales. Although a matter of pure speculation, had Bradley filed a Chapter 11 prior

---

**3.** Besides Knee and Bradley's previous attorney, Paul S. Bliley, Jr., Bradley lists only two creditors. The schedules attached to his petition show Bradley owing Investors Savings and Loan Association $2,200.00, secured by a second deed of trust on the Richmond condominium, and an unsecured debt of $1,503.00 to the Crescent Place Condominium Association.

**4.** 11 U.S.C. § 1322(b)(2) provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

to the expiration of the intial Chapter 13, instead of another Chapter 13, Knee might have been more conducive to an extended payout. The possibility that the sale of the Florida condominium might not produce enough funds to pay Knee's obligation in full under the second Chapter 13 was a consideration that should have been taken into account at the time Bradley chose to file his second petition for relief, and allowing Bradley to file a Chapter 11 case at this stage is both unfair and inequitable to Knee, the holder of the secured obligation on his principal residence.

This Court is also persuaded that this case has not been filed in good faith by Bradley's lack of participation in the most recent Chapter 13 case. There were three separate hearings on Knee's motion to dismiss in that case, and Bradley chose not to attend any of the hearings. Even though Bradley's counsel apprised the Court that Bradley was aware of the hearings, counsel could offer no excuse for Bradley's nonattendance. It is obvious from the scenario of these cases that this creditor does not want to continue a financial relationship with this debtor. Knee has been thwarted from the benefit of her bargain for many months, and her needs may be such that full payment of the obligation dictates compliance with the contractual terms of her note and deed of trust. Other than comments of debtor's counsel to the effect that he (counsel) had been unable to procure new financing, there was no testimony from Bradley or any other party as to what efforts, if any, he had made to refinance this loan since it became the central issue between the parties upon default in November 1984 and which precipitated the second Chapter 13 filing in May, 1985.

It is also worth mentioning that Bradley's assets exceed his liabilities. The basis for filing this petition rests on the ground that Bradley alleges an inability to pay his debts as they mature, specifically the remaining obligation on Knee's note. It is quite obvious that the sole purpose of this latest filing is to make this recalcitrant creditor engage in long term financing. Although it is possible under Title 11 to alter the contractual rights and obligations of a creditor with a claim secured only by a security interest in the debtor's principal residence, the manifest injustice precipitated in this case compels this Court, in order to relieve the disproportionate prejudice imposed on this creditor, to grant the relief requested.

It is the opinion of this Court that when a debtor, on the eve of foreclosure, twice files for relief under Title 11 of the United States Code in order to invoke the provisions of § 362 to enjoin a creditor's contractual and statutory rights to liquidate its indebtedness, and under the additional circumstances present in this case, cause exists under § 362(d) of the Bankruptcy Code for relief from the automatic stay. This is particularly true where the debtor has filed for relief under Title 11 three times in the last two years, and the same creditor has been forestalled from proceeding with two foreclosure sales at the last possible moment. Even though Bradley may be able to pay Knee a substantial portion of the indebtedness at this time, the circumstances of this case and the delay and cost to the petitioning creditor dictate that relief be granted.