### In re Robert and Cathleen NOVAK, Debtors.

**Bankruptcy No. 088–81089–21.**

United States Bankruptcy Court, E.D. New York.

April 14, 1989.

See also, Bkrtcy., 95 B.R. 24.

Robert Novak, Riverhead, N.Y., pro se.

Cathleen Novak, Brightwaters, N.Y., pro se.

Marianne De Rosa, Glen Cove, N.Y., Chapter 12 Trustee.

Philip Irwin Aaron, P.C. by Allan B. Mendelsohn, for creditors John & Barbara Klein.

Solomon & Siris, Garden City, N.Y. by Lewis J. Solomon, for creditor Frank A. Scappaticci, d/b/a Corporate Financing.

CECELIA H. GOETZ, Bankruptcy Judge:

Robert and Cathleen Novak ("Novaks" or "debtors") filed a plan for reorganization under Chapter 12 on February 14, 1989, which came before the Court for confirmation on March 16th and March 21, 1989.

The debtors are family farmers by virtue of their ownership of two corporations, Novaks Tropical Aviary, Inc. ("NTA") and Wildlife Centers, Inc. ("WLC"). NTA is a New York corporation organized in 1974. WLC is a Delaware corporation organized in 1986. Both corporations have also filed under Chapter 12. NTA filed on August 15, 1988, WLC on October 20, 1988. The debtors filed on November 17, 1988.

According to the schedules filed by NTA and WLC, those two corporations have operated essentially as one unit, co-mingling funds and sharing expenses. Both corporations are engaged in the growing of grain, breeding of birds and the breeding and stabling of horses. NTA's petition shows assets in the amount of $128,587.70 and liabilities of $434,387.71. WLC lists assets in the amount of $32,660 and debt in the amount of $239,050. This is the second time NTA has resorted to the protection of the bankruptcy law. On May 28, 1979, it filed under Chapter XI of the Bankruptcy Act and confirmed a plan of arrangement paying ten cents on the dollar on February 23, 1983.

Neither of the petitions of the two corporate debtors provides any information on

past income, responding to questions calling for this information for each of the two years preceding 1988 as "not yet determined" or "not available." However a debt of $9,000 for payroll taxes is shown for 1987 as owed by WLC.

According to the information furnished by the Novaks their gross income in 1987 was approximately $60,000 and the prior year, including rent and loan payments from NTA and WLC, was $26,750. The debtors' schedules show real property consisting of a 13 acre farm and a one family dwelling in Brightwaters, New York, of the value of $910,000 burdened by $502,000 in mortgages. In addition they are owed $200,000 by NTA and WLC for loans and rent.

According to the debtors' Chapter 12 plan they anticipate collecting salaries in the future in the amount of $62,500 net from the two corporations now in reorganization under Chapter 12 and rental income from the same sources in the amount of $26,000, plus repayment of loans in an amount as yet unknown. Salaries and rents will yield them a total income of $88,500. Their personal expenses, including clothing, food, medical, transportation, but not income taxes, add up to $31,175, leaving them an excess of income over expenses of $57,325.

The debtors propose to pay $469 a month to the Chapter 12 Trustee for a period of 36 months to be used exclusively for the payment of various secured creditors; unsecured creditors are to receive nothing. According to the debtors' schedules they have secured debts of $414,090 and unsecured debts of $159,886.

Several secured creditors appeared at the hearing on confirmation to object to the proposed plan which radically alters the terms of their security interest in the debtors' property. In the case of Corporate Financing which holds a mortgage on the personal residence of Mrs. Novak and her children, it increases the payout time from ten years to thirty years and reduces the interest rate from 16¾% to 10%; in the case of John and Barbara Klein who hold a first mortgage on the debtors' 13 acre farm, it increases the period in which the loan is to be paid off from three to thirty years and reduces the interest from 12% to 8½%. With respect to both creditors the plan proposes to make a single annual payment in lieu of the monthly payments called for by the original security agreements. The debtors defend their right to make these radical changes by virtue of § 1222(b)(2) which, unlike the corresponding provision of Chapter 13, permits modification of the rights of holders of secured claims, including those holding mortgages on a debtor's principal residence. However, the debtors presented no evidence as to why these radical changes in the rate of interest to be paid, the length of the term or the time of the payments were needed for an effective reorganization.

■ The Court, however, finds it unnecessary to reach the issues raised by these objections because the plan cannot be confirmed at the present time for a number of reasons. One is that in view of the debtors' substantial equity in their real estate—over $400,000—a plan paying nothing to unsecured creditors does not satisfy 11 U.S.C. § 1225(a)(4).[1] Such creditors would receive substantially more in a liquidation of the debtors' assets in Chapter 7 than the debtors propose to pay them. However, the debtors have stated that they intend to amend their plan to raise the amount for unsecured creditors. A second reason why the plan cannot be confirmed is that the debtors have failed to satisfy 11 U.S.C. § 1225(a)(6) which requires them to show that they "will be able to make all payments under the plan and to comply with the plan."

---

1. § 1225(a)(4) reads:
  Confirmation of plan.
    (a) Except as provided in subsection (b), the court shall confirm a plan if—
        \*    \*    \*    \*    \*    \*
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

## DISCUSSION

The debtor has the burden of proof on all elements of Bankruptcy Code § 1225(a), including feasibility. *In re Adam*, 92 B.R. 732 (Bankr.E.D.Mich.1988); *In re Martin*, 78 B.R. 593 (Bankr.D.Mont. 1987). Section 1225, Confirmation of Plan, reads:

(a) except as provided in subsection (b) the court shall confirm a plan if

\*      \*      \*      \*      \*      \*

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

The key to the determination of feasibility relates to "the probability of actual performance of provisions of the plan." *In re Konzak*, 78 B.R. 990 (Bankr.D.N.D. 1987). "The determination of feasibility cannot be made in an evidentiary vacuum but ... must be rooted in probability predictions based upon objective fact." *In re Konzak, supra*, 78 B.R. at 994, *citing, In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985). All income projections must be based on concrete evidence and must not be speculative or conjectural. *In re Snider Farms, Inc.*, 83 B.R. 1003 (Bankr.N.D.Ind. 1988).

The debtors' ability to make the payments called for by the plan is entirely dependent on the ability of NTA and WLC to make salary and rental payments in the amounts projected. At the present time both corporations are in financial limbo, both have filed under Chapter 12, neither has as yet confirmed a plan. Such information as to them as is available is wholly inconsistent with deeming them to have the ability to pay the debtors close to $90,000 a year.

On January 18, 1989, both NTA and WLC filed plans of reorganization on which a confirmation hearing was scheduled on February 21, 1989. An amended plan supplying the missing information was filed in NTA's case on February 14, 1989 and in WLC's case on February 17, 1989, but no one except the Chapter 12 Trustee and the United States Trustee was served with copies of the amended plan.

On February 21, 1989, the Court denied the request of the two corporate debtors for adjournments of the hearing on confirmation and denied confirmation to the plans of both.

The Court denied confirmation to NTA of the plan because of its failure to cover the priority debt claimed by the Internal Revenue Service although no objection had been taken to IRS' claim. The IRS had filed a claim in the amount of $115,745.42 based in part on estimated taxes for 1986, 1987, 1988, for which no tax returns were filed. At the hearing on confirmation, Mr. Novak indicated that the reason no tax returns had been filed for that period of time was that NTA had not been operating during this period, (which appears to coincide more or less with the organization of WLC) and that no taxes were due but no objection to the claim had been filed.

Similarly, the failure of WLC's plan to recognize the security interest of Ocala Breeders Sales Co., although no objection had been taken to that claim either, resulted in a denial of confirmation to WLC's plan.

In each case the denial was without prejudice to refiling a new plan after clarifying the status of the objecting creditors. NTA and WLC, however, elected instead to file appeals from the Bankruptcy Court's refusal to adjourn the confirmation hearing and the denial of confirmation to their plans. Recently WLC has filed a second amended plan without waiting for the disposition of its appeal.

Apart from the fact that both the corporations on which the debtors rely for the projected income to fund the plan are in Chapter 12 and their proceedings appear to have ground to a halt because of the pending appeals, there is nothing in the past history of these two corporations which provides any assurance that they can generate the sums of money needed to make the debtors' plan feasible. Despite the fact that NTA was able to wipe out all its unsecured debt due to its use of Chapter 11 in 1979, ten years later, its liabilities are three times its assets, representing an increase in debt of around $30,000 each year.

WLC's brief history since it was organized in 1986 has been equally disastrous. In its short life, it has run up a debt of $200,000 or approximately $100,000 each year and owes withholding taxes in the amount of $9,000.

The debtors have not met their burden of persuasion. They have not shown this Court that they will be able to make all payments required under the plan and to comply with the plan. Therefore, confirmation of the plan is denied.

An Order consistent with this Opinion is being issued simultaneously.