### In re Robert and Cathleen NOVAK, Debtors.

### Bankruptcy No. 088–81089–21.

United States Bankruptcy Court, E.D. New York.

Aug. 3, 1989.

Robert Novak, Riverhead, N.Y., pro se.

Philip Irwin Aaron, P.C. by Allan Mendelsohn, Syosset, N.Y., for John and Barbara Klein.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before this Court is a motion pursuant to 11 U.S.C. § 362(d) by John and Barbara Klein for relief from the automatic stay imposed by 11 U.S.C. § 362(a) when the debtors filed for relief under Chapter 12 on November 17, 1988. The movants seek leave to foreclose on a mortgage they hold on a valuable piece of real property owned by the debtors. No mortgage payments have been made for over a year, since March 1988.

The debtors, Robert and Cathleen Novak, have moved to dismiss the Kleins' motion and this motion is likewise now before the Court.

When the debtors filed for relief, Section 362 automatically stayed the movants from taking any action to recover the moneys admittedly owed them. Their only avenue of relief was Section 362(d), which reads in relevant part:

(d) On request of a party·in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Section 362(e) requires that a request for relief be acted on promptly. Unless the Court finds merit in the position of the party opposing such relief, the stay is lifted automatically 30 days after the request is made. Section 362(e) provides:

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.

In a hearing on a request for relief from the automatic stay the party opposing relief has the burden of proof on all issues except that of the debtor's equity in the property. 11 U.S.C. § 362(g).

This voluntary Chapter 12 proceeding, initiated by Robert and Cathleen Novak, is the last of three proceedings, all filed under Chapter 12 by related debtors. The first was filed on August 15, 1988 by Novaks Tropical Aviary Corporation ("NTA"), a New York corporation organized in 1974, owned 100 percent by Robert and Cathleen Novak. In some of its papers NTA described itself as doing business under the name "Wildlife Center, Inc." ("Wildlife") After a creditor objected to the caption "Novaks Tropical Aviary Corp., d/b/a Wildlife Center, Inc." as confusing, and the Court ruled that NTA was the only company covered by the automatic stay, Wildlife, an NTA subsidiary, filed its own petition on October 20, 1988.

On November 17, 1988, the Novaks followed NTA and Wildlife into Chapter 12. NTA and Wildlife are represented by Michael E. Walter, Esq., but the Novaks have elected to proceed *pro se*. Mr. Novak has shown himself to be at least as, if not more, knowledgeable than many attorneys practicing before this Court with regard to bankruptcy. This may be due to his prior exposure to the bankruptcy courts. On May 25, 1979, NTA filed under Chapter 11 and in 1984 confirmed a plan of reorganization paying ten percent to its unsecured creditors. In 1980, the Novaks discharged $175,000 in unsecured debt in Chapter 7.

Mr. Novak keeps himself up to date on developments in bankruptcy cases through Lexis.[1]

---

**1.** Mr. Novak's argument during the hearing on the present motions reflects his legal sophistication:

MR. NOVAK: I want to know how they [the movants] feel they're inadequately protected. I want to know what cause they're speaking of. I want to know how they relate [section] 362(d) for cause when the next word after cause is including. You have to have two things for the 362(d)(1) to take place. You have to have the lack of adequate protection and cause. He has neither. He also does not have a claim in the estate, okay? He also, there's a question now, whether he is a party

in interest any longer and whether he has the standing to bring forth a motion to vacate this stay. I don't believe he even has standing any longer. He don't have a claim. He can keep his lien but he don't have a claim.

\* \* \* \* \* \*

I think we got actually a double moot question here. It's moot on the basis of corporate [Corporate Financing], it's moot on the basis that he doesn't have a claim in the estate. I haven't had time to get cites but I will tell you this, if I'm going to respond to Mr. Mendelsohn's *Sambo* case, he's correct. You don't

All three debtors, NTA, Wildlife and the Novaks, describe their operations in exactly the same words: "Breeding, raising of birds & horses. Growing of grain." All three have supplied minimal, or no, information respecting their income in response to the questions with respect to their gross income prior to the current tax year and the percentage thereof derived from farming operations. This information is critical because only someone deriving in excess of 50 percent of his gross income from farming operations is eligible for Chapter 12 relief. Section 101(17). NTA and Wildlife answered identically that its gross income for the last tax year was "Not yet determined" and the amount of its gross income from farming operations, "Not available." Accordingly, whether either qualifies for relief under Chapter 12 is not known at the present time. The Novaks estimated their gross income for the prior tax year to be $60,000, of which $26,750, or less than 50 percent, was derived from farming operation, including rent and loan payments made by NTA and Wildlife. (Petition, Answer to Question 4).

Despite the fact that almost a year has elapsed since the first of these three related proceedings was filed, this Court knows very little more about any of the three debtors. This is due, in part, to the fact that monthly operating reports are not required from Chapter 12 debtors as they are from Chapter 11 debtors.

None of the three debtors has as yet confirmed a plan. NTA and Wildlife both obtained extensions so that neither filed a plan until January 18, 1989. Both were zero payment plans, that is, under them unsecured creditors would receive nothing, only priority and secured creditors would be paid. Each plan turned out not to qualify for confirmation because it failed to deal appropriately with claims filed as priority or secured claims, to which no objection had been taken. In each case the denial of confirmation on February 21, 1989 was without prejudice to refiling a new plan. NTA and Wildlife, however, elected instead to file appeals to the District Court which were disposed of on July 10, 1989 when the Honorable Reena Raggi, District Court Judge, denied leave to appeal for reasons stated on the record on June 23, 1989.

While their appeals were still pending NTA and Wildlife each filed objections to some of the claims filed against them. NTA has not filed a second plan. Wildlife filed an amended plan, paying approximately one percent to unsecured creditors, on which the scheduled hearing on confirmation has been adjourned at Wildlife's request to September 12, 1989.

The Novaks filed their first and only Chapter 12 Plan on February 14, 1989. Like the plans filed by NTA and Wildlife, unsecured creditors were to be paid nothing. Payments of $50,649 a year were to be used solely to satisfy secured and priority creditors. The Plan was to be funded from salaries, rental income and the repayment of loans to the Novaks from NTA and Wildlife.

On April 14, 1989, the Court held that it was unnecessary to consider all the objections to the Plan because it could not be confirmed for two reasons:

One is that in view of the debtors' substantial equity in their real estate—over $400,000—a plan paying nothing to unsecured creditors does not satisfy 11 U.S.C. § 1225(a)(4). Such creditors would receive substantially more in a liquidation of the debtors' assets in Chapter 7 than the debtors propose to pay them.... A

have to file a claim according to *Sambo*. [*In re Sambo's Restaurant, Inc.*, 754 F.2d 811 (9th Cir.1985)] He's absolutely correct. There's only one problem, *Sambo's* an 11, this is a 12. *Sambo* don't apply. It's irrelevant. *Johnson* applies. [*In re Johnson*, 95 B.R. 197 (Bankr.D. Colo.1989)] Where *Johnson* says that you must abide by Section 501, 502, 1325, three thousand and two rule, three thousand and four, three thousand and 21, and it says, this makes the conclusion almost inescapable that

creditors with secured claims must timely file proof of claims. It's a 1989 case. I can't have anything more on point. He's out. That's the bottom line. He's out, don't give a claim. THE COURT: Do you want to give a citation for that *Johnson* case?

MR. NOVAK: Absolutely. Lexis eight. That's all I have. It was decided January 6th of '89. Re: Allan Johnson.

(Transcript, Hearing, April 27, 1989, pp. 14-16).

second reason why the plan cannot be confirmed is that the debtors have failed to satisfy 11 U.S.C. § 1225(a)(6) which requires them to show that they "will be able to make all payments under the plan and to comply with the plan." (Footnote omitted)

(Opinion, April 14, 1989, 102 B.R. 22, 23)

The Court considered the information available as to NTA and Wildlife to be wholly inconsistent with an ability to pay the debtors $90,000 a year, the sum necessary to meet their personal expenses and fund the Plan.

The Novaks have neither filed an appeal from the denial of confirmation of their Plan nor have they filed an amended Plan.

According to the schedules filed by the debtors, their assets, consisting in the main of two pieces of real property, have a value of $950,000 and their debts, both secured and unsecured, and even including debts which they claim to be debts of NTA and Wildlife and not theirs, total $574,000. Thus their schedules on their face show a net worth of at least $380,000. Their schedules do not list their stock ownership in NTA nor the money owed them by either NTA or Wildlife and therefore include no value for that stock nor for those receivables. Likewise, the schedules do not reflect the value of the Novaks ownership of a sailboat and various motor vehicles which, in their liquidation analysis submitted in support of their Plan, are said to have a total value of $30,750. If these assets are included the Novaks' net worth rises to over $400,000.

The two pieces of property owned by the Novaks are a residence at Brightwaters, New York, and a 13 acre spread, located at least 30 miles away, in Calverton, New York. Cathleen Novak and other members of the family live in the residence at 118 South Bay Avenue, Brightwaters, New York, to which the debtors, in their schedules, attribute a market value of $260,000. It is burdened by several mortgages: A first mortgage held by Second City Bank, a second mortgage held by Frank A. Scappapticci, d/b/a Corporate Financing ("Corporate Financing") and a third mortgage

held by the Small Business Administration ("SBA"), all totalling $177,000, leaving a net equity of $83,000.

The 13 acre spread which contains a 13,-000 square foot barn, office and a 12,000 square foot studio apartment, in which Mr. Novak is residing, was bought in 1985 for $110,000 with the help of a $265,000 loan from the SBA. It has been further improved by corrals and fencing for horses. The movants acquired the loan from the SBA in 1987, at which time they also put $5,000 in escrow which has become the subject of dispute, the details of which are unimportant to the decision of the present motion, raising the total mortgage to $270,-000. Under the terms of the mortgage, the Novaks are obligated to pay the Kleins $3,329 monthly, representing an interest rate of 14 percent and are to pay off the entire mortgage in 1990.

There is a second mortgage on the property to guarantee a loan of $90,000 to Wildlife. The debtors' schedules attribute a value of $650,000 to the property, giving them an equity of $290,000. The Novaks ceased making any payments on the Kleins' mortgage in March 1988.

At the same time as the debtors ceased paying the Kleins they also stopped their payments on the second mortgage on the Brightwaters residence, leading to a motion by the mortgagee impacted thereby, Corporate Financing, for relief from stay. Because the time allowed by Chapter 12 for filing a plan had not yet elapsed, the Court denied the request on January 19, 1989. The Court said:

The Code allows a Chapter 12 debtor ninety days in which to file a plan. 11 U.S.C. § 1221. The legislative history to § 1205 indicates that Congress wanted to give the family farmer time to devote his attention to the plan, time in which he would not be diverted by satellite litigation. Joint Explanatory Statement of the Committee of the Conference for the 1986 Act, H.R.Rep. No. 958, 99th Cong., 2d Sess. 4950, 1986. Absent proof that a creditor is being prejudiced by the lapse of time it appears to be consistent with the legislative intention to continue the

stay for the ninety days needed to formulate a plan.

In the instant case the plan is due to be filed within a month. The only information available to the Court is that there is a substantial equity in the property which, if true, means that no prejudice will be done to the movant if the stay is continued despite the failure to make mortgage payments for the full ninety days. *Should a plan not be timely filed or should it fail to satisfy § 1225(a)(5), it seems likely that the movant will be entitled to relief from the Section 362 stay but his present motion is premature.* Section 362 is intended to give a debtor time to evaluate the situation and propose a plan. There is nothing before the Court which would justify the Court in reducing the time of the debtors to do so from the ninety days given them by Congress. (Emphasis supplied)

(Opinion, 1/19/89, 95 B.R. 24, 26.)

On October 20, 1988, within one month of the time the debtors filed under Chapter 12, the Kleins filed the present motion seeking relief from stay. The Kleins' motion papers recite that the Novaks are indebted to the Kleins in the total amount of $250,000.

The Kleins have never filed a formal proof of claim in this proceeding. Notice was sent to all creditors on November 18, 1988 that "[i]n order to have a claim allowed so that a creditor may share in any distribution from the estate, a creditor must file a claim whether or not the creditor is included in the list of creditors filed by the debtor ... on or before March 9, 1989." The notice advised creditors that claims not filed by that date "will not be allowed, except as otherwise provided by law."

The debtors submitted in opposition to the Kleins' motion a document entitled "Declaration of Robert and Cathleen Novak in Opposition to Creditors Motion for Relief from Automatic Stay" ("Declaration, January 9, 1989"). They also moved to dismiss the Kleins' motion on which the Court refused to rule independently. That motion was carried on the Court's calendar together with the motion for relief from stay. The Court is now disposing of both.

In their Declaration, the Novaks allege their total debt to the movants on the date they filed to be $265,385. They claim that the property on which the Kleins hold their mortgage is essential not only to their rehabilitation but to that of their closely held corporations, NTA and Wildlife. They assert that the Kleins are adequately protected because of a large equity cushion. The property, they say, is worth $650,000, and its value is steadily increasing, "Unlike the residential real estate market, the commercial and farm market in the Calverton area has and is appreciating every year. In fact with the current facilities on the farm and the likelihood of Suffolk Meadows race track operation opening later this year and the continuance of improvements to the property (mostly through sweat equity) this property will no doubt continue to appreciate." (Declaration, January 9, 1989, pp. 2–3).

The Chapter 12 plan subsequently filed by the debtors on February 14th, 1989 radically restructured the Kleins' mortgage. It converted it from one that would be paid off in 1990 to one that would only be satisfied around the year 2020. It further reduced the interest from fourteen percent to eight and a half percent, beginning with the date the debtors had filed for relief under Chapter 12 on November 17, 1988. Further, all payments were made conditional upon the turnover to the debtors of the $5,000 held in escrow to which the Court had earlier ruled they were not entitled until the conditions of the escrow were satisfied. The payments under the mortgage were no longer to be made monthly, but annually, and were to begin one year after the confirmation of the plan of reorganization.

When the Kleins appeared at the confirmation hearing to object to the restructuring of their debt, the Novaks urged the Court not to hear them because they had filed no claim and, therefore, lacked standing. It never became necessary for the Court to rule formally on the question of standing because confirmation was denied

for reasons unrelated to the Kleins' objections.

After repeated adjournments the motion of the Kleins for relief from stay came on for hearing before the Court on April 27, 1989. At that point in time the motion had been pending more than four months although the Code is designed to ensure a determination within 30 days. Mr. Novak's request for another adjournment on the ground that he had been unable to examine the movants respecting the legal basis of their motion was denied.

The Kleins' attorney, Allan Mendelsohn, Esq., made clear that the basis on which he was moving was that the plan proposed by the debtors had been denied confirmation. He said:

> There is cause for relief of stay based on the denial of confirmation.... Denial of confirmation of a plan is one basis to dismiss a Chapter 12 proceeding. If it's a basis to dismiss a Chapter 12 proceeding, your Honor, it's certainly cause, which would be a lesser standard, to vacate the automatic stay. I would think that the drastic relief of dismissal would be if something could satisfy the test to be deemed cause for dismissal it certainly can be cause for relief from the automatic stay.

(Transcript, Hearing, April 27, 1989, pp. 6–7).

In response, Mr. Novak stated that the debtors were preparing a second plan which would not necessarily be dependent on income from NTA and Wildlife. Asked what provision it would make for the Kleins he responded that they would receive nothing if their claim was held not to be an allowed claim because never filed, or they would be paid out over a thirty year period as proposed in the earlier plan denied confirmation. (Transcript, Hearing, April 27, 1989, pp. 37–38). Mr. Novak was given two weeks from receipt of the transcript of the hearing on the Kleins' motion to submit whatever additional material he desired in answer to Mr. Mendelsohn's presentation. Because Mr. Novak elected to correct errors in the transcript of the hearing his response was not received until June 15, 1989. Mr. Mendelsohn submitted a reply on July 7, 1989, to which Robert Novak objected on the ground that it came later than the week the Court had allowed for a reply. The Court, therefore, has given the reply no consideration.

The extensive memorandum filed by Mr. Novak in opposition ("Declaration, June 12, 1989), makes the following points:

> 28. In summation the Kleins lack standing to continue this motion for the following reasons:
> Failure to file a proof of claim
> They are not a creditor
> They are not a party in interest
> Did not show prima facie case
> They are not being irrepairably [sic] harmed
> They are adequately protected
> The property is necessary for reorganization
> The debtors have equity in the property
> The liklihood [sic] of a successful reorganization and confirmation of the plans
> The amended plan will show the ability to make all payments and feasibility
> Defective caption

(Declaration, June 12, 1989, p. 15).

## DISCUSSION

This case presents the interesting question whether a solvent individual, by filing a petition under Chapter 12, can thereafter secure an indefinite moratorium on all his obligations while continuing to enjoy the unlimited use of all his assets. Sweeping as is the power granted to Congress under the bankruptcy clause, it is doubtful if it goes as far as the Novaks are trying to push it. The cases which up to this point in time have uniformly sustained the constitutionality of Chapter 12 have all involved insolvent and, therefore, bankrupt debtors. *E.g., Traveler's Insurance Co. v. Bullington*, 89 B.R. 1010 (M.D.Ga.1988), *aff'g In re Bullington*, 80 B.R. 590 (Bankr.M.D.Ga. 1987). None have involved solvent debtors, like the Novaks.

More specifically, this motion turns on the question as to whether an unexcused and unexplained failure after eight months

of a Chapter 12 debtor to confirm a plan constitutes "cause" for a secured and unpaid creditor to be given relief from the automatic stay imposed by 11 U.S.C. § 362.

Before turning to the specific facts involved in this proceeding, it is appropriate to examine the structure and purposes of Chapter 12. Chapter 12 is entitled "Adjustment of Debts of a Family Farmer with Regular Annual Income." The legislative history describes the Chapter as "tailored specifically to the realities of a nationwide farm crisis." Floor Statements, in the House of Rep., 132 Cong.Rec. H9001, 99th Cong., 2d Sess. (Daily Ed. October 2, 1986). It is "an extraordinary response to what is, hopefully, a temporary crisis." Floor Statements in the Senate, 132 Cong.Rec. S15075, 99th Cong., 2d Sess. (Daily Ed. October 3, 1986).

It was enacted to meet an economic crisis due mainly to a precipitous drop in the value of farm land. This precipitous decrease left one third of all farms technically insolvent, or experiencing extreme financial difficulties. During the preceding period of steadily increasing land values farmers had borrowed heavily, and at relatively high interest rates, to expand production capability. This borrowing created a mountain of debt which put these farms in jeopardy when land values radically declined. Shapiro, *An Analysis of the Family Farmer Bankruptcy Act of 1986*, 15 Hofstra L.Rev. 353 (1987); Cochran, Rubin, *The New Chapter 12 of the Bankruptcy Code: A More Efficient Approach for Family Farmer Reorganization*, 57 Miss. L.Journal 185 (1987).

The solution hit upon by Congress was to allow farmers through the vehicle of reorganization plans to radically restructure obligations secured by mortgages on their land. Section 1222(b)(2) explicitly permits a Chapter 12 plan to modify the rights of holders of secured claims. Otherwise Chapter 12 parallels in many respects Chapter 11, the Reorganization Chapter, and Chapter 13 which provides for the adjustment of debts of an individual with regular income. However, almost all the controls present in Chapters 11 or 13 for the protection of creditors are missing from Chapter 12. In Chapter 12, unlike Chapter 11, creditors have no right to file a plan. They cannot force the liquidation of the debtor. They have no vote on the debtor's plan. Unlike Chapter 13, there is no requirement that payments begin on the filing of the plan and, unlike the Chapter 13 debtor, the Chapter 12 debtor may modify the mortgage on his principal residence. *Compare* 11 U.S.C. § 1222(b)(2) and 11 U.S.C. § 1322(b)(2).

The statute is written to limit the radical relief made available by Chapter 12 to its intended beneficiaries. To qualify as a family farmer 80 percent of an individual's debts (except mortgages on a principal residence) must arise out of farming operations and more than 50 percent of such individual's gross income for the preceding year must have been derived from farming operations. 11 U.S.C. § 101(17).

In addition, one significant creditor protection was written into the law and this is the requirement that the debtor file a plan not later than 90 days after the order for relief, subject to extension by the Court only if an extension is substantially justified. 11 U.S.C. § 1221. This is complemented by Section 1224 which requires the Court, after "expedited notice" to hold a hearing on confirmation of the plan and to conclude such hearing promptly, "[e]xcept for cause the hearing shall be concluded not later than 45 days after the filing of the plan." Further, among the grounds authorizing dismissal for "cause" of a Chapter 12 proceeding are: "(1) Unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors; ... (3) failure to file a plan timely under section 1221 of this title; ... (5) denial of confirmation of a plan under section 1225 of this title and denial of request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1208(c)(1), (3), (5).

The time periods which require a plan to be confirmed no later than 135 days, or four months after filing, were very carefully considered and the focus of much attention in Congress. Congress settled on the

90 day period in order to obtain lender support for Chapter 12. This is reflected in a letter from the American Bankers Association which Senator Strom Thurmond, Chairman of the Senate Judiciary Committee, had printed in the Congressional Record at the time of the passage of Chapter 12, reading in part:

> As you know, earlier in this Congress, we testified in opposition to proposed farm bankruptcy legislation. Under your leadership, a number of key conference improvements were made to the legislation which we believe improves the balance between the concerns of agricultural creditors and farm debtors. Specifically, we strongly support the 52 additional bankruptcy judges, limitations to 90 days for debtors filing a plan, and the 7 year sunset of farm bankruptcy section.
>
> Because of your assurances and that of Senator Grassley and Senator DeConcini to monitor closely the effects of this experimental legislation and assurances that you will address any major inequities in the next Congress, I wish to inform you that ABA does not oppose this legislation.

See 132 Cong.Rec. § 15075, 99th Cong., 2d Sess. (Daily Ed. October 3, 1986), Letter of Edward L. Yingling, American Bankers Association.

Senator Grassley, one of the Conferees who presented the Conference Report to the Senate, said of the 90 day period:

> Importantly, the new subtitle ensures that the bankruptcy system will not be abused. Earlier versions of this new chapter allowed a farm-debtor 240 days to file a plan. During this time, collateral could deteriorate without the promise of a confirmable reorganization plan. To address this problem, the exclusive period has been reduced to 90 days in the conference approved bill.
>
> If time limits are not met, the case will be dismissed and cannot be refiled. This will be a powerful incentive to get these cases moving, rather than languishing in the courts. If fraud is found, the case will be dismissed or converted to Chapter

> 7. This encourages good faith and honest dealing by the debtor throughout the case.

132 Cong.Rec. § 15076, 99th Cong., 2d Sess. (Daily Ed. October 3, 1986).

The Conference Report gives equal emphasis to these time limits. It notes that Section 1224 requires that Chapter 12 confirmation hearings be concluded within 45 days after the filing of the plan:

> The Conferees are aware that this imposes a burden on the bankruptcy courts. Therefore, an exception for cause is provided. While a backlog of cases is sufficient cause for an extension of the forty-five day requirement, the conferees expect this exception to be used sparingly in order to facilitate the proper operation of Chapter 12—which proper operation depends on prompt action.

Conference Report on HR 5316, Bankruptcy Judges, United States Trustees and Family Farmers Bankruptcy Act of 1986. H.Rep. No. 99–958, p. 51, 99th Cong., 2d Sess. (1986), U.S.Code Cong. & Admin. News 1986, pp. 5227, 5252.

■ These deadlines have manifestly not been met by these debtors. Their plan, which was filed exactly ninety days after the Order for Relief was entered, patently did not qualify for confirmation since it provided nothing for payment to unsecured creditors despite the fact that the debtors' schedules showed a substantial equity which would be available to creditors on liquidation. Thus the plan on its face did not satisfy 11 U.S.C. § 1225(a)(4). Since that plan was denied confirmation on April 14, 1989 more than 90 days, in fact 105 days, have elapsed yet no new plan has been filed. Furthermore, no application has been made for an extension. In the words of the Conference Report, the debtors have prevented the "proper operation [of Chapter 12 which] depends on prompt action."

■ The movants argue that the debtors' delay in obtaining confirmation of a plan constitutes "cause" for relief from the automatic stay imposed by Section 362, and the Court agrees. The existence of an equity cushion, although it establishes that

adequate protection is present, does not negate the presence of "cause" for relief. *See, e.g., In re Bradley,* 60 B.R. 571 (Bankr.E.D.Va.1986); *Farmers & Merchants Bank & Trust v. Trail West, Inc.,* 28 B.R. 389 (D.C.S.D.1983). As the movants made clear, they are predicating their request for relief on this "cause" irrespective of whether adequate protection is present or not.

■ The debtors' failure to meet the Chapter 12 deadlines without explanation, or excuse, is aggravated by the total suspension of payments to the moving creditors. What the Novaks have done here is secure for themselves a moratorium of indefinite duration on their obligation to the Kleins by submitting an unconfirmable plan and then doing nothing. This is not what Congress intended. Congress imposed tight deadlines and said that if they were not met the Chapter 12 proceeding could be dismissed. What constitutes "cause" for dismissal, which would terminate the stay as to all creditors, surely constitutes "cause" for relieving a single creditor of the automatic stay.

In the relatively short period of time Chapter 12 has been in effect numerous bankruptcy courts have held that debtors forfeited their ability to proceed under Chapter 12 by failing to respect the statutory deadlines.

Thus, in *In re Offield,* 77 B.R. 222 (Bankr.W.D.Mo.1987), the bankruptcy court held that the debtor's failure to file a plan within 110 days of his petition for Chapter 12 relief, coupled with an open ended request for extension of time required that the case be dismissed. The Court said:

> Section 1221 provides that a plan "shall be filed not later than 90 days after the order for relief". In this case no plan has been filed although one hundred and ten (110) days have passed since the order for relief was entered. The comments of Senator Grassley contained in the Conference Reports are clear and

unequivocal as to what should happen under such circumstances.

77 B.R. at 223.

In this case more than 240 days, or twice the period of time involved in *Offield,* has passed.

In *In re Lubbers,* 73 B.R. 440 (Bankr.D. Kan.1987), the court granted from the bench the motion of the United States Attorney to dismiss because of the inadequacy of the plan and the debtor's failure to file it timely. It was not until 134 days after the filing of the Chapter 12 petition that the debtors filed their first real plan of reorganization.

In *In re Lawless,* 79 B.R. 850 (D.C.W.D. Mo.1987) the District Court affirmed the Bankruptcy Court in dismissing the debtor's Chapter 12 petition on two independent grounds: (1) the debtors' income had not met the requirements of 11 U.S.C. § 101(17) in that they had not derived 50 percent or more of their income for the critical tax year from farming operations; (2) the debtors had neither filed a plan nor moved for extension for time to file a plan within 90 days mandated by Chapter 12.

*In re Bentson,* 74 B.R. 56 (Bankr.D. Minn.1987) in which the court reluctantly allowed a two week extension to file an amended plan in a case in which the order for relief had been filed 142 days earlier and confirmation of the debtors' plan had been denied, the Court said:

> In light of the competing interests of speed and the chance to reorganize which the legislative history indicates Congress considered, motions to extend the time to file a new plan may be granted, but not routinely. Chapter 12 cases are clearly not to become Chapter 11 like proceedings.
>
> Therefore, the following types of factors should be considered in determining whether an extension of time to file a new plan should be granted and how long an extension should be granted: when the first Chapter 12 plan was filed, how comprehensive and complete the first plan was, the reasons for denial of confirmation of the first plan, the likelihood of successful confirmation of a new

plan, and how long an extension is requested.

A debtor will be required to make a good faith effort to file a confirmable plan in the first instance. A motion to extend the time to file a plan will not be granted where an initial plan was a halfhearted effort or obviously only a negotiating tool. A debtor's cash flow projections for the initial plan must also have made a prima facie showing that reorganization is possible. Chapter 12 will not be used as a delay technique.

74 B.R. at 58.

In this case not only is the time involved since a petition was filed far longer than in *Bentson,* but no extension of time has ever been requested and if such a motion had been made, or were made now, the factors pointed to in *Bentson* would weigh against it. It has been over six months since the first Chapter 12 plan was filed, which was inadequate on its face. This Chapter 12 case is rapidly becoming a Chapter 11–like proceedings where creditors are indefinitely blocked from satisfaction of their claims while the debtor, making repeated promises to reorganize, continues to use his assets to his own profit.

■ Entering into the Court's decision to lift the stay are the doubts it entertains as to the Novaks' good faith in filing under Chapter 12. Lack of good faith itself, where established, constitutes "cause" for lifting the Section 362 stay to permit foreclosure. *In re Little Creek Development Co.,* 779 F.2d 1068, 1071 (5th Cir.1986) and cases there cited.

As the Fifth Circuit pointed out:

Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. *See In re Victory Constr. Co.,* 9 B.R. 549, 551–60 (Bankr.C.D.Cal.1981) (containing an excellent historical survey). *See, e.g., Fidelity Assur. Assoc. v. Sims,* 318 U.S. 608, 621, 63 S.Ct. 807, 813–14, 87 L.Ed. 1032 (1943); *A–COS Leasing Corp. v. Wheless,* 422 F.2d 522, 523–25 & n. 1 (5th Cir.1970). Such a standard fur-

thers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." The Supreme Court aptly summarized the bankruptcy court's responsibility to enforce a standard of good faith when it stated:

"A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest." ... These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization....

*American United Mut. Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 145, 61 S.Ct. 157, 161–62, 85 L.Ed. 91 (1940) (quoting *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940)).

As a court of equity, this Court believes the doubts raised by the record as to the debtors' good faith are pertinent.

First, there is serious reason to question whether the debtors qualify as family farmers. According to their schedules, they do not. Less than 50 percent of their gross income they said was derived from farming. Second, if they do so qualify, their situation is the exact opposite of the one Congress was trying to alleviate, that of depressed land prices putting the squeeze on a mortgagor. The Novaks' land is worth six times what it was when

they bought it five years ago. Third, they are very solvent individuals with a positive net worth and in no need of bankruptcy relief.

■ Turning to the debtors' contentions, the Novaks' position that the Kleins have no standing to seek relief from the Section 362 stay is without merit. They predicate this on the fact that no formal claim was filed by the Kleins within 90 days after the first meeting of creditors. Rule 3002(a) requires an *unsecured* creditor to file a proof of claim, and in a Chapter 12 case, as in a Chapter 13 case, it must be filed within 90 days after the first date set for the meeting of creditors. Rule 3002(c). But Rule 3002(a) is silent with respect to secured claims; there is no explicit requirement that they be filed. On the contrary, Section 506(d) explicitly recognizes that there will be situations where a secured claim will not be filed and, therefore, will not be allowed.

But if a notice of claim is required the present motion may so qualify. There is respectable authority that the filing of a motion for relief from stay is the equivalent of the filing of an informal notice of claim since it gives the debtor notice of the amount of the claim and that it may be thereafter be amended by filing a formal notice of claim. *In re Sambo's Restaurant, Inc.*, 754 F.2d 811, 815 (9th Cir.1985) (Documents filed in the United States District Court in connection with related litigation held to establish an informal proof of claim because they "state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable."); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1381 (9th Cir.1985) (Motion to lift the stay held to constitute an informal proof of claim); *In re Benedict*, 65 B.R. 95 (Bankr.N.D.N.Y.1986) (Objecting to confirmation of a Chapter 13 Plan held notice of proof of claim). *See also, In re Chicoine*, 97 B.R. 30 (Bankr.D.Mont.1988); *In re Sherret*, 58 B.R. 750 (Bankr.W.D.La.1986).

■ But it is unnecessary at this point to reach any definitive conclusion regarding whether or not the Kleins' request for relief from stay qualifies as an informal notice of claim because the sole requirement for seeking relief from stay is that the one so requesting be "a party in interest." 11 U.S.C. § 362(d). In *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983), in which the Second Circuit held that to be party in interest the party seeking relief from stay must be a creditor or debtor, it cited the legislative history and in particular the authoritative House Report, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. The relevant passage in the House Report reads:

> Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay. The bill enunciates the standards for relief, and further provides that unless the court acts quickly, the relief is automatic on request by a creditor. Too often today, court delay in handling requests for relief amounts to a complete denial of relief. The court can thus avoid the issue, and yet rule in the debtor's favor. This bill prevents such action. If relief is granted, *a creditor may foreclose on property on which he has a lien*, may continue a State court suit, or may enforce any judgment he might have obtained before the bankruptcy case, whatever is appropriate in the particular case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 175, reprinted in 1978 U.S. Cong & Admin. News 5787, 6136. (Emphasis supplied).

As this excerpt shows, Congress intended that a creditor with a lien on property, like the Kleins, be entitled to relief from stay if circumstances warranted and necessarily, therefore, was entitled to seek such relief. By not filing a notice of claim the Kleins may have lost the right to have their claim be deemed an "allowed" claim (11 U.S.C. § 502(a)) and they may have thereby forfeited the right to share in any distribution from the estate created under Chapter 12, that is to share in the moneys paid to the Chapter 12 trustee for distribution to creditors. *See, In re Johnson*, 95 B.R. 197 (Bankr.D.Colo.1989). But they did not cease to be a "party in interest" within the meaning of Section 362 entitled to seek

relief from the stay currently depriving them of their state law remedies.

■ Some points made by the debtors remain to be addressed. The debtors point out correctly that at the time the Kleins filed their motion, the "cause" on which they relied did not exist, that is, the time to file a plan and/or have it confirmed had not yet elapsed. But just as a stay is in the nature of a continuing injunction, so necessarily is a request for relief from stay one that speaks to the present. The Court, as a court of equity, acts on the facts as they exist when it rules, not as they were when the request was first made.

The Novaks also note that the hearing at which the Kleins' attorney made clear that he was predicating his request for relief on the failure to confirm a plan came only 14 days after the Court had denied confirmation to the debtors' plan. But the debtors' obligation to file a plan and have it confirmed timely is unrelated to, and independent of, the application of the Kleins for relief from stay. The Court in its opinion of January 18, 1989, rendered in this case on the request of Corporate Financing for relief from stay, put the debtors on notice that failure to file and/or confirm a plan would be ground for lifting the stay. Furthermore, since the argument on the Kleins' motion on April 27th more than 90 days have elapsed, yet no plan has been filed despite the fact that the Novaks claimed on April 27th that such a plan was ready to be filed except for assembling the financial data to show its feasibility.[2] (Transcript, Hearing, April 27, 1989, pp. 37–38).

It is possible that Mr. Novak may point to the pendency of the various objections to claims as excusing, or explaining, the delay in filing and/or confirming a plan. No reason suggests itself, however, why the debtors delayed until June 1st, 1989 in filing objections and then scheduled a hearing on them not until six weeks later. If the claims have not been resolved it is due to the debtors' tardiness in bringing on their objections.

If, for any reason, the Novaks had a problem in proposing or confirming a plan they should have moved for leave to extend their time. In that event their creditors would have had the opportunity to be heard and the Court to rule on whether an extension was justified. The Novaks should not simply have done nothing, thereby remaining under the Section 362 stay, paying the Kleins nothing and leaving them and the Court totally in the dark when, and if, any payments whatever will be forthcoming. This is totally contrary to the legislative intention.

Request for a final hearing is authorized by Section 362(e). The Court is not ordering the Section 362 stay continued in effect until another hearing can be held. The hearing already held satisfies the Court that there is no reasonable likelihood that the Novaks, in opposing relief from stay, will prevail at the conclusion of such a hearing.[3]

For the foregoing reasons, the motion for relief from the Section 362 stay is granted and the stay is lifted. The debtors' motion to dismiss the motion for relief from stay is denied.

---

2. On July 20, 1989, at a hearing on confirmation of a second plan filed by Wildlife, Mr. Novak said that he has had difficulty assembling financial data because his accountant is withholding records claiming nonpayment of his fees. No authorization has been secured from the Court by any of the three debtors, NTA, Wildlife or the Novaks, for the retention, post-petition, of an accountant. Accordingly, if the books of any of the three are being withheld either for a pre-petition debt or a post-petition obligation, there should be no difficulty in securing their release by appropriate application to this Court.

3. Section 362(e) reads, in pertinent part:

A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section *if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing.* If the hearing under this subsection is a preliminary hearing, then such final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing. (emphasis supplied).

An Order consistent with this Opinion is being issued simultaneously.